UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

JOSEPH NOBILE,                               :

                 Plaintiff,                    :      Case No.

   -against-                                :

MARGOT LOUISE WATTS, a/k/a       :      **COMPLAINT**
M.L. STEDMAN; SIMON & SCHUSTER, INC.;
DREAMWORKS II DEVELOPMENT      :
COMPANY, LLC; STORYTELLER HOLDING
CO., LLC, d/b/a AMBLIN PARTNERS; and  :
THE WALT DISNEY COMPANY,

               Defendants.                   :

------------------------------------------------------------- x

       Plaintiff Joseph Nobile, by his attorneys, Scarola Malone & Zubatov LLP, for his

complaint against the defendants, alleges as follows:

<h2 style="text-align:center">NATURE OF ACTION</h2>

       1.    This is an action for copyright infringement under the Copyright Act of

1976, as amended, 17 U.S.C. § 101 *et seq.*

       2.    Plaintiff Joseph Nobile ("Nobile") is the author and copyright owner of a

screenplay entitled *The Rootcutter*, subsequently re-titled *A Tale of Two Humans*.  The

screenplay has been revised a number of times, but the version that is the subject of this action

was registered with the United States Copyright Office on January 26, 2004.  That screenplay

(the "Screenplay") has registration number PAu2-843-195.  A true and correct copy of the

registration certificate is attached hereto as Exhibit A.

3.      Defendant Margot Louise Watts ("Watts"), writing under the pseudonym M.L. Stedman, is the author of a novel entitled *The Light Between Oceans* (the "Novel"), which was published by defendant Simon & Schuster, Inc. ("Simon & Schuster") in 2012.  The Novel knowingly and willfully copied, plagiarized, pirated and misappropriated expressive content from Nobile's Screenplay.  In September 2016, defendant DreamWorks II Development Company, LLC ("DreamWorks") theatrically released a motion picture (the "Film") also entitled *The Light Between Oceans*, which was based on the Novel.  Defendant The Walt Disney Company, through its Walt Disney Studios Motion Pictures division ("Disney"), distributed the Film.  Defendant Storyteller Holding Co., LLC, doing business as Amblin Partners ("Amblin"), is the successor-in-interest to DreamWorks.

4.      Nobile has expended development money and considerable time and effort attempting to obtain financing for the production of a motion picture based on his Screenplay, including after the publication of the Novel, of which he was unaware.  The widespread dissemination of the Novel and Film, containing striking similarities to the unique expressive content of Nobile's Screenplay, will in all likelihood prevent Nobile from being able to raise financing or interest any production company in filming his Screenplay.  Nobile seeks actual damages to compensate him for that loss and, also, seeks to recover all profits derived by the defendants from the publication of the Novel and distribution and exhibition of the Film which are attributable to the infringement of his copyrighted Screenplay, as provided in § 504(b) of the Copyright Act, 17 U.S.C. § 504(b).  Alternatively, pursuant to § 504(c) of the Copyright Act, 17 U.S.C. § 504(c), Nobile seeks statutory damages for defendants' willful

2

copyright infringement. Nobile also seeks an award of attorney's fees pursuant to § 505 of the
Copyright Act, 17 U.S.C. § 505.

**JURISDICTION AND VENUE**

5.      This is a civil action seeking monetary damages for violations of the
copyright laws of the United States.

6.      This Court has original subject matter jurisdiction of this action pursuant
to 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over each of the defendants because
they either regularly do business in New York and in this District or have committed acts of
copyright infringement within New York and in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and
1400(a).

**THE PARTIES**

9.      Plaintiff Nobile resides in and is a citizen of the State of New Jersey. Prior
to writing the Screenplay, Nobile wrote a number of other screenplays and produced and
directed an independent feature film entitled *Closer to Home*.

10.     Defendant Watts was born and raised in Australia and is a citizen of the
United Kingdom who resides in London, England. Watts has been admitted to practice law in
the State of Western Australia in Australia and in the United Kingdom, as a solicitor. She

3

worked as an intellectual property lawyer in London prior to the publication of *The Light Between Oceans*, which is her first novel. She is no longer actively practicing as a lawyer in Australia or in England, having abandoned her legal career in favor of a career as a writer.

11.    Defendant Simon & Schuster is a Delaware corporation with its principal place of business in New York, New York. It is a book publisher. Simon & Schuster published the Novel.

12.    Defendant DreamWorks is a Delaware limited liability company with its principal place of business in Universal City, California. It has until recently been a motion picture company. In September 2016, DreamWorks theatrically released the Film, which is based on the Novel.

13.    Defendant Amblin is a film, television and digital content creation company, which is the successor-in-interest to DreamWorks. Amblin is a Delaware limited liability company with its principal place of business in Universal City, California.

14.    Defendant Disney is an entertainment conglomerate. Disney is a Delaware corporation with its principal place of business in Burbank, California. Disney's film distribution division, Walt Disney Studios Motion Pictures, distributed the Film throughout the United States.

4

## FACTUAL BACKGROUND

15. In 2004, seeking financing for the production of his Screenplay as a motion picture, Nobile sent the Screenplay to numerous agents and film production companies, including Miramax Films ("Miramax") and Working Title Films ("Working Title").

16. As of 2004, Watts had not published any literary works. She was registered as a solicitor and was employed as an intellectual property lawyer, working in-house for Diageo PLC ("Diageo"), a British multinational alcoholic beverages company, which purveyed branded spirits, beer and wine. After leaving Diageo in 2005, Watts continued practicing intellectual property law as an individual solicitor, unaffiliated with any law firm or company, through the date of the publication of her Novel.

17. Beginning in approximately 2006 or 2007, Watts studied creative writing for several years at Birkbeck College, University of London ("Birkbeck"). One of her instructors at Birkbeck was non-party Jeremy Sheldon ("Sheldon").

18. In 2004-2005, Sheldon was a script reader for both Miramax and Working Title, giving him, and other members of the Birkbeck faculty with whom Sheldon may have shared the Screenplay, access to Nobile's Screenplay.

19. In the scant number of interviews she gave under the pseudonym M.L. Stedman, Watts stated that she took creative writing courses and also hired a writing coach. Sheldon not only taught creative writing, but also has worked as a writing coach. In the

5

interviews, Watts also stated that she went on a creative writing vacation in Greece. Sheldon

ran creative writing vacations in Greece in that same time period.

20.     In the interviews, Watts never reveals her true name and never discloses

details about her personal life, including her age, family, employment history, or experiences

that might resemble those in the Novel. Her stated reason for concealing her identity and

experiences is that the Novel is not autobiographical. Similarly, the official biography for M.L.

Stedman released by Simon & Schuster states in its entirety: "M.L. Stedman was born and

raised in Western Australia and now lives in London. *The Light Between Oceans* is her first

novel." Watts also is almost never voluntarily photographed in any print media. This modesty

on her part is notable given the extraordinary success of the Novel, which was on the *New York

Times* best-seller list for two years, returning there again briefly after the release of the Film,

and has sold over 23 million copies.

21.     Watts did not register the copyright in the Novel in her own name;

instead, the copyright in the Novel is owned by a corporation, Grasshill Communications, Ltd.

("Grasshill") which is wholly-owned by Watts. In 2013, Grasshill recorded a short form option

agreement with the U.S. Copyright Office, giving DreamWorks the right to make the Film.

22.     In light of Nobile's wide dissemination of his Screenplay as well as Watts'

own employment as an individual solicitor practicing intellectual property law, there are myriad

ways in which Watts could have obtained access to the Screenplay, including one in particular

which is obvious and compelling: her relationship with Sheldon, a script reader with access to

the Screenplay with whom Watts studied creative writing while at Birkbeck. Moreover, her

6

own interviews suggest that Watts may well have hired Sheldon as a private writing coach and/or attended his creative writing vacation in Greece. This chain of events and the links between Nobile, Sheldon, and Watts create at least a reasonable possibility that Watts obtained access to Nobile's Screenplay directly from Sheldon, or indirectly from other Birkbeck faculty who obtained the Screenplay from Sheldon, enabling her to copy from it. This inference is further strengthened by Watts' evasive and secretive behavior, notable for a first-time author of an acclaimed novel.

         23.    The inference of unlawful copying is compelled by the substantial similarities between the protected, copyrightable elements in the Screenplay and the Novel, upon which the Film is closely based. The substantial and, indeed, striking similarities between the Screenplay, Novel and Film (except where, as noted below, the Film departs in minor ways from the Novel), include the following examples:

| The Rootcutter | The Light Between Oceans |
|---|---|
| (a). The Screenplay is set on a remote storm-swept island. | The Novel and Film are set on a remote storm-swept island. |
| (b). The story takes place in the early twentieth century. | The story takes place in the early twentieth century. |
| (c). At the core of the story is a desperate childless couple longing for a baby. | At the core of the story is a desperate childless couple longing for a baby. |
| (d). The wife has had three stillbirths. | In the Novel, the wife has had three miscarriages or stillbirths (two miscarriages and an ensuing stillbirth). In the Film, it is only two. |
| (e). The three stillborn fetuses are memorialized by three simple graves and three small wooden crosses. | In the Novel, the three miscarried or stillborn fetuses are memorialized by three simple graves and three small wooden crosses. In the Film, there are only two graves and wooden crosses. |
| (f). The wife kneels and prays in front of the | The wife kneels and prays in front of the |

7

| crosses. | crosses. |
|---|---|
| (g). The last stillbirth coincides with a violent ocean storm and, after giving birth, the wife leaves a trail of blood on the floor. | The last stillbirth coincides with a violent ocean storm and, after giving birth, the wife leaves a trail of blood on the floor. |
| (h). After the third stillbirth, the husband holds the silent, bloody baby and the wife says, "Let me hold him! I want to hold my baby!" | In the Novel, after the third stillbirth, the husband holds the silent, bloody baby and the wife says, "Give me my baby! Let me hold her!" |
| (i). After the third stillbirth, the husband says "I hate this place." | In the Novel, after the stillbirth, the wife says "I hate this place." |
| (j). Sensing their hopes for a child are doomed, the husband tells his wife, "When we get to the mainland, we'll start a new life, just you and I." | In the Novel, sensing their hopes for a child are doomed, the husband tells his wife, "If it's just you and me for the rest of our lives, that's enough for me." |
| (k). A small boat providentially washes ashore, containing a woman having a breech birth whose moans the husband hears. | A small boat providentially washes ashore, containing a dead man and an infant whose cries the wife hears. |
| (l). The husband helps deliver the baby but the baby's mother dies. He gives the baby to his wife, who is still lactating from her recent stillbirth and she is able to breastfeed the infant. | The husband gives the baby to his wife, who is still lactating from her recent stillbirth and she is able to breastfeed the infant. |
| (m). The wife shows the husband the proper way to hold the infant. | In the Novel, the wife shows the husband the proper way to hold the infant. |
| (n). The husband convinces the wife to keep the baby and to pass him off as their own. The wife feels emotions of guilt, which help lead to tragedy. | The wife convinces the husband to keep the baby and to pass her off as their own. The husband feels emotions of guilt, which help lead to tragedy. |
| (o). The reluctant wife tells her husband: "This child has a father somewhere!" and (referring to the dead woman), "Who is she? Where is she from?" and "She must have family." | In the Novel, the reluctant husband tells his wife: "Then the baby's probably got a mother waiting for it somewhere onshore," and "Sweetheart, we don't have any idea about the mother, or about who the man was," and "What if the mother's not dead, and he's got a wife fretting, waiting for them both?" |
| (p). The husband overcomes the wife's reluctance by saying, "This was no accident. He was destined for us." | In the Novel, the wife overcomes the husband's reluctance by saying he should "accept this gift that's been sent to us. How long have we wanted a baby, prayed for a baby?" In the Film, the wife tells the husband this "can't just be a coincidence that she showed up." |
| (q). After years of failed pregnancies, the wife | After years of failed pregnancies, the wife has |

8

| has accumulated baby items needed to dress and care for their long-awaited child. | accumulated baby items needed to dress and care for their long-awaited child. |
|---|---|
| (r). In order to conceal the provenance of the baby, the husband buries the corpse of the woman from the boat on the beach. | In order to conceal the provenance of the baby, the husband buries the corpse of the man from the boat near the beach. |
| (s). The guilt-ridden wife changes the subject after a visitor tells her, "[The baby's] nose is so delicate. It's just like yours . . . ." | The guilt-ridden husband changes the subject after a friend tells him and his wife, "She's got [the husband's] nose. Hasn't she?" |
| (t). The husband has a dream that he is drowning. | In the Novel, the husband has a dream that he is drowning. |
| (u). Threatened with the discovery of their charade, the husband retches violently by the road. | As the discovery of their charade approaches, the wife retches violently in a bathroom on the mainland and, later, on the island when the police arrive. |
| (v). The husband comes under suspicion for murder when the buried corpse is unearthed. | The husband comes under suspicion for murder when the buried corpse is unearthed. |

24.    The Novel makes some cosmetic changes to the Screenplay, undoubtedly

in the hopes of disguising the copying. In the Screenplay, the baby is a boy, but is a girl in the

Novel (and Film). In the Screenplay, the adult in the boat is a woman, but in the Novel (and

Film) it is a man. In the Screenplay, the wife is initially reluctant to keep the baby, but in the

Novel (and Film) it is the husband who is initially reluctant to keep the baby. The Screenplay is

set on a remote but not uninhabited island off the coast of Ireland, whereas in the Novel (and

Film) the setting is a remote lighthouse island off the coast of Australia where no one else lives.

Also, apart from the development of the similar, unique, core plot elements, themes, settings,

characters, mood, and dialogue described in paragraph 23, the plots diverge, as do the endings.

25.    These additions to the Screenplay's plot by Watts do not alter the fact

that the core of her Novel is substantially similar, qualitatively and quantitatively, to the

protected elements of Nobile's Screenplay. Moreover, those core similarities, taken

9

cumulatively, are so strikingly similar in their unique expressive content as to preclude the

possibility of independent creation, permitting a finding of copying even without a showing of

access. Thus, although there is more than sufficient evidence of access through a third party

(Sheldon) connected to both Nobile and Watts, even without this evidence the striking

similarities between the works would, in and of themselves, give rise to an inference of copying.

26.     Nobile does not closely follow the contemporary best-seller market for

literary fiction or publications such as the *New York Times* Book Review.  He was completely

unaware of the publication or success of the Novel, and, indeed, continued his attempts to

produce a film based on the Screenplay after the publication of the Novel.  In August 2016, a

cousin of Nobile's, who was familiar with the Screenplay, told him about the trailer for the Film,

which was about to be released by DreamWorks.  Nobile watched the trailer and then

purchased the Novel.  Upon reading the Novel, Nobile realized that his Screenplay had been

plagiarized.

## FIRST CLAIM FOR RELIEF
### (For Copyright Infringement against Defendants Watts and Simon & Schuster)

27.     Nobile repeats and realleges the allegations contained in paragraphs 1

through 26 as though fully set forth herein.

28.     Nobile owns a valid copyright in the Screenplay which was registered

with the U.S. Copyright Office in 2004.  The Screenplay is copyrightable because it is creative

and expressive.

10

29.     Watts' unauthorized copying of protected, expressive elements of

Nobile's Screenplay and incorporation of those elements into the Novel violated Nobile's

exclusive rights, as the copyright owner of the Screenplay, to reproduce his copyrighted work,

to prepare derivative works based upon his copyrighted work, and to display his copyrighted

work publicly. Simon & Schuster assisted in the preparation of the Novel and published and

distributed it, thereby violating Nobile's exclusive rights, as the copyright owner of the

Screenplay, to reproduce his copyrighted work, to prepare derivative works based upon his

copyrighted work, to distribute copies of his copyrighted work to the public by sale or other

transfer of ownership, and to display the copyrighted work publicly. *See* 17 U.S.C. § 106.

30.     Watts' copyright infringement was willful. The Screenplay indicates, on

its first page, that it is copyrighted. The elaborate secretive steps taken by Watts to preserve

her anonymity also are indicative of consciousness of guilt and willfulness.

31.     Simon & Schuster's willful blindness in failing to perform due diligence in

order to determine whether Watts plagiarized a copyrighted work in writing her first novel also

is tantamount to willful copyright infringement.

32.     The copyright infringement by Watts and Simon & Schuster has caused

and continues to cause injury to Nobile to a degree and extent yet to be determined. Nobile is

entitled to recover his actual damages and all profits (in amounts to be established at trial)

derived by Watts and Simon & Schuster which are attributable to the infringement of his

copyrighted Screenplay, as provided in 17 U.S.C. § 504(b), or, alternatively, statutory damages

11

for willful copyright infringement, as provided in 17 U.S.C. § 504(c). Nobile is also entitled to
recover his reasonable attorney's fees pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF
### (For Copyright Infringement against Defendants
### DreamWorks, Amblin and Disney)

33.      Nobile repeats and realleges the allegations contained in paragraphs 1
through 32 as though fully set forth herein.

34.      Nobile owns a valid copyright in the Screenplay which was registered
with the U.S. Copyright Office in 2004. The Screenplay is copyrightable because it is creative
and expressive.

35.      DreamWorks infringed Nobile's copyright by incorporating into the Film
protected, expressive elements of Nobile's Screenplay and by distributing and exhibiting the
Film, or causing the Film to be distributed and exhibited, thereby violating Nobile's exclusive
rights, as the copyright owner of the Screenplay, to reproduce his copyrighted work, to prepare
derivative works based upon his copyrighted work, to distribute copies of his copyrighted work
to the public by sale or other transfer of ownership, to perform his copyrighted work, and to
display his copyrighted work. See 17 U.S.C. § 106.

36.      As DreamWorks' successor-in-interest, Amblin is liable for DreamWorks'
copyright infringement, as set forth in paragraph 35.

37.      Disney infringed Nobile's copyright by distributing the Film, which
incorporated protected, expressive elements of Nobile's Screenplay. This violated Nobile's

exclusive rights, as the copyright owner of the Screenplay, to distribute copies of his copyrighted work to the public by sale or other transfer of ownership, to perform his copyrighted work, and to display his copyrighted work. *See* 17 U.S.C. § 106.

38. The copyright infringement by DreamWorks, Amblin and Disney has caused and continues to cause injury to Nobile to a degree and extent yet to be determined. Nobile is entitled to recover his actual damages and all profits (in amounts to be established at trial) derived by DreamWorks, Amblin and Disney which are attributable to the infringement of his copyrighted Screenplay, as provided in 17 U.S.C. § 504(b), or, alternatively, statutory damages, as provided in 17 U.S.C. § 504(c). Nobile is also entitled to recover his reasonable attorney's fees pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiff Joseph Nobile prays that this Court enter judgment in his favor and against Defendants:

1. Awarding him statutory damages in the maximum amount permitted by law, or, alternatively at his election, actual damages and profits derived by Defendants attributable to copyright infringement of the Screenplay;

2. Awarding him his costs and reasonable attorney's fees; and

3. Granting him such other and further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff Joseph Nobile demands a trial by jury.

13

Dated: New York, New York
January 26, 2017

SCAROLA MALONE & ZUBATOV LLP

By:

Daniel J. Brooks
1700 Broadway, 41st Floor
New York, New York 10019
(212) 757-0007
dbrooks@smzllp.com

*Attorneys for Plaintiff Joseph Nobile*